

**FILED & ENTERED**

APR 07 2015

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bakchell  **DEPUTY CLERK**

**OPINION NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>PAUL FAUSTIN MORRIS; ANNE H. MORRIS,<br><br>　　　　　　Debtors.<br>―――――――――――――――<br>THAO NGUYEN,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>PAUL FAUSTIN MORRIS; ANNE H. MORRIS,<br><br>　　　　　　Defendants. | Case No. 2:13-bk-28978 RK<br><br>Chapter 7<br><br>Adv. No. 2:13-ap-02052 RK<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL |

　　　The above-captioned adversary proceeding was tried before the undersigned United States Bankruptcy Judge on January 15, 2015.  Roman Vu, of the Law Firm of Roman Vu, APLC, appeared for Plaintiff Thao Nguyen ("Plaintiff").  David Brian Lally, of the Law Office of David Brian Lally, appeared for Defendant Paul Faustin Morris ("Defendant").[1]  After the parties submitted proposed findings of fact and conclusions of

---

[1] By order entered on May 28, 2014, the court resolved the adversary proceeding as to Defendant Anne H. Morris in granting her motion for summary judgment. ECF 30.  In that same order, the court denied the motion for summary judgment as to Defendant Paul Faustin Morris.  References to "Defendant" in these

law on January 27 and 30, 2015, and the deadline for filing objections to proposed findings of fact and conclusions of law had passed on February 13, 2015, without any such objections being filed, the court took the matter under submission.  Having considered the evidence admitted at trial, the oral and written arguments of the parties, and the other papers and pleadings filed in this matter, including the testimony of Paul Morris and Thao Nguyen at trial, Trial Declaration of Thao Nguyen (ECF 46), Trial Declaration of Paul Morris (ECF 48), Plaintiff's trial exhibits; Defendant's trial exhibits, Pre-Trial Stipulation (ECF 36) approved by order entered August 28, 2014 (ECF 37), Plaintiff's Trial Brief (ECF 51), and Defendant's Trial Brief (ECF 50), the court makes the following findings of fact and conclusions of law on the matter pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure.

## **FINDINGS OF FACT**

1. Defendant Paul Morris ("Defendant") first met Tommy Pham, husband of Plaintiff Thao Nguyen, when Defendant went to work for H&T Seafoods as its Vice President of Imports in 2001.  At H&T Seafoods, Mr. Pham was responsible for procuring fresh fish for Asian retail stores in California and Nevada.  Defendant also met Plaintiff at that time and during Chinese New Year celebrations and other company gatherings. Defendant left H&T Seafoods in early 2003 and went to work for Southwind Foods. Defendant maintained contact with Plaintiff and her husband, and sometime in 2005-2006, Mr. Pham left H&T Seafoods, and he and Plaintiff then started their own company called Fresh and Frozen Seafood Distributing, dba Crab House Trading ("Crab House").  *Trial Declaration of Paul Morris,* ¶ 2; *Pre-Trial Stipulation,* ECF 36, ¶¶ 9 and 10; *Trial Declaration of Thao Nguyen,* ¶ 3 ("I knew Defendant Paul Faustin

---

findings of fact and conclusions of law after trial will be to Mr. Morris since the trial only involved him as a defendant.

    Morris ('Paul') through my husband. We were good friends at the time, as my husband and I knew him for nearly 10 years before he asked me for the loan.").

2. Defendant continued to work for Southwind Foods until March 2009, and then took a job with Sea Wealth Products where he held the majority shares. Plaintiff and Crab House were doing business with Sea Wealth beginning in or around September 2008. Plaintiff's business was buying frozen shrimp and fish on a regular basis, and she agreed to advance money to Sea Wealth so it could take delivery of a container of imported seafood from the Los Angeles Port. *Trial Declaration of Paul Morris,* ¶ 3.

3. Plaintiff loaned Defendant's business $175,000 in cash on December 28, 2010, and another $50,000 in cash on January 19, 2011. *Trial Declaration of Paul Morris,* ¶ 6; *Trial Testimony of Thao Nguyen,* January 15, 2015, at 10:06 a.m.; *Trial Declaration of Thao Nguyen,* ¶ 5; *Plaintiff's Trial Exhibit 1*.

4. The loan agreement between Plaintiff and Defendant was verbal and not in writing, and according to Plaintiff, Defendant was to pay her back within one month at a rate of 36% interest per annum. *Trial Declaration of Thao Nguyen,* ¶¶ 5 and 7; *Trial Declaration of Paul Morris,* ¶¶ 4-6.

5. At the time of the loan, Plaintiff and Defendant were "good friends," having known each other for nearly 10 years. *Trial Declaration of Thao Nguyen,* ¶ 3 ("I knew Defendant Paul Faustin Morris ('Paul') through my husband. We were good friends at the time, as my husband and I knew him for nearly 10 years before he asked me for the loan.").

6. Plaintiff testified in her trial declaration that "Paul manipulated me into loaning him the money. Before I agreed to loan him the money, he told and then showed me proof of many invoices showing 5-6 national shipment containers from Thailand to India. These containers were the size that 18 wheelers tend to pull. He told me that he needed the money to pay for costs to pay the delivery costs to the seller, U.S. Customs, and other costs. He also said that after he pays these costs, he would

have possession of the containers to sell and pay me back. He promised that he would pay me back within one month. He promised to provide collaterals to secure the loan, but never carried through with it. In addition, Paul mentioned that he has a few apartment complexes in Alhambra worth millions of dollars, which doesn't include his business and homes that would be worth a lot more. Paul further represented to me that his sea food business has inventory worth millions that he would see soon." *Trial Declaration of Thao Nguyen,* ¶ 4.

7. Plaintiff testified at trial and contends that, in loaning Defendant money, she relied on representations made by Defendant that "he owned apartment complexes and that his company has millions of dollars worth of inventory" and "would never have loaned him money if he had told her the truth." *Plaintiff's Trial Brief*, ECF 51 at 3:21-23; *Trial Declaration of Thao Nguyen*, ECF 46, ¶¶ 4 and 5. As discussed herein, the court does not find this testimony to be credible.

8. Defendant testified at trial that he never told Plaintiff that he owned an apartment complexes with millions of dollars in equity. *Trial Testimony of Paul Morris,* January 15, 2015 at 11:12 – 11:14 a.m. and 11:24 – 11:28 a.m. Defendant testified that he owned one condominium unit in Alhambra and did not represent to Plaintiff that it was worth millions. *Id.* The court finds that this testimony to be credible.

9. According to Defendant, the loan was part of a regular and informal business relationship between him and Plaintiff and her husband, which involved making sales and purchases and advancement of funds for these transactions on behalf of each other: "I continued to work for Southwind Foods until March, 2009, and then took a job with Sea Wealth Products where I held the majority shares. Plaintiff and Crab House were doing business with Sea Wealth beginning in or around September, 2008; I joined that industry as the business volume increased. Plaintiff's business was buying frozen shrimp and fish on a regular basis, and she agreed to advance money to Sea Wealth to take delivery of a container of imported seafood

from the Los Angeles Port. My business agreed to sell the product and of course repay Plaintiff and her Company. In these transactions, the inventory was given to Crab House Trading as collateral by transferring the ownership to its name. However, as of the date of the Bankruptcy Petition, Crab House Trading (Plaintiff and her business) owed Sea Wealth Products, my business, approximately $118,414.00. As such, I am the beneficiary of this large sum of money. These transactions, and the loan from Plaintiff to my business, were all oral." *Trial Declaration of Paul Morris,* ¶¶ 3 and 4. The court finds this testimony to be credible and shows the informal nature of the business relationship between the parties who made unsecured loans to each other.

10. According to Defendant in his trial declaration, he asked Plaintiff and her husband for a loan, and she offered to help him with a cash loan to support his business. *Trial Declaration of Paul Morris,* ¶ 5. Defendant stated that he offered business shares in his business to Plaintiff for the loan, but that "Plaintiff and her husband wanted only interest at 36% on their loan to my business." *Id.* In response, Plaintiff in her trial declaration stated: "Contrary to Paul's previous claim, I never wanted interest at 36% on the loan. In fact, Paul was the one that offered me 36% shares in his business when he could not pay for the loan. I did not accept Paul's offer to pay me back with shares in his business and told him that I just want my money back." *Trial Declaration of Thao Nguyen,* ¶ 7. Having heard the testimony of these two witnesses at trial and had an opportunity to evaluate their credibility, the court finds the description of the loan transaction by Defendant regarding the agreement to a 36% interest rate as more credible and thus determines that his testimony on this point is accurate. Nevertheless, regardless of whose suggestion the interest rate was, it is an undisputed fact that Plaintiff and Defendant both agreed to the 36% interest rate for the loan made by Plaintiff to Defendant and his business.

11. Defendant's business repaid a total of $191,370.00 on the loan made by Plaintiff by way of wire transfers and checks from February 18, 2011 to January 28, 2013. *Trial Declaration of Paul Morris,* ¶¶ 6 and 7; *Trial Testimony of Thao Nguyen,* January 15, 2015 at 10:32 - 10:38 a.m.; *Defendant's Trial Exhibits 5 and 6; Defendant's Trial Exhibit Errata.* These loan payments are set forth below:

Loan Repayment

| Transaction | Reference |
|---|---|
| 2/18/11 - $51,000.00 Wire | Defendant's Trial Exhibit 6 at 7 (Defendant's Trial Exhibit 5 lists the payment as $50,000) |
| 2/8/11 - $3,500.00 Check 1534 | Defendant's Trial Exhibit 6 at 8 |
| 3/29/11 - $3,500.00 Check 1595 | Defendant's Trial Exhibit 6 at 12 (Date listed as 3/30/15) |
| 4/12/11 - $3,000.00 Check 1635 | Defendant's Trial Exhibit 6 at 17 |
| 4/25/11 - $3,000.00 Wire | Defendant's Trial Exhibit 6 at 16 |
| 5/24/11 - $3,500.00 Wire | Defendant's Trial Exhibit 6 at 20 |
| 6/6/11 - $25,000.00 Wire | Defendant's Trial Exhibit 6 at 23 |
| 6/17/11 - $20,000.00 Wire | Defendant's Trial Exhibit 6 at 23 |
| 7/5/11 - $5,000.00 Wire | Defendant's Trial Exhibit 6 at 26 |
| 7/29/11 - $15,000.00 Wire | Defendant's Trial Exhibit 6 at 27 |
| [8/24/11 - $3,540.00 Wire] | This payment listed on Defendant's Trial Exhibit 5 and is corroborated by Plaintiff's Trial Testimony is not counted because it does not appear on Defendant's bank statements. |
| 9/26/11 - $3,450.00 Wire | Defendant's Trial Exhibit 6 at 35 |

| | | |
|---|---|---|
| 1 | 10/28/11 - $3,450.00 Wire | Defendant's Trial Exhibit 6 at 39 |
| 2 | 11/23/11 - $3,540.00 Wire | Defendant's Trial Exhibit 6 at 43 |
| 3 | 12/23/11 - $3,540.00 Wire | Defendant's Trial Exhibit 6 at 46 |
| 4 | 1/23/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 4 |
| 5-7 | 2/27/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 9 (This payment is not listed in Defendant's Trial Exhibit 5, but appears on the bank statement.) |
| 8-10 | 3/23/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 13 (This payment is not listed in Defendant's Trial Exhibit 5) |
| 11 | 4/30/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 18 |
| 12 | 5/25/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 23 |
| 13-14 | 6/26/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 28 (listed date as 6/25/12) |
| 15 | 7/30/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 32 |
| 16 | 8/23/12 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 36 |
| 17 | 9/28/12 - $3,540.00 Wire | Defendant's Trial Exhibit Errata at 40 |
| 18 | 10/26/12 - $3,360.00 Wire | Defendant's Trial Exhibit Errata at 43 |
| 19 | 11/30/12 - $3,000.00 Wire | Defendant's Trial Exhibit Errata at 47 |
| 20 | 12/14/12 - $450.00 Wire | Defendant's Trial Exhibit Errata at 51 |
| 21 | 12/28/12 - $3,400.00 Wire | Defendant's Trial Exhibit Errata at 52 |
| 22 | 1/28/13 - $3,450.00 Wire | Defendant's Trial Exhibit Errata at 56 |

*Defendant's Trial Exhibits 5 and 6; Defendant's Trial Exhibit Errata; Trial Declaration of Paul Morris,* ¶¶ 6 and 7; *Trial Testimony of Thao Nguyen,* January 15, 2015 at 10:32 - 10:38 a.m. Defendant's bank statements show that most of these payments

were made by wire transfers from Defendant's bank account to Plaintiff's bank account at East-West Bank. *Id.*

12. By the court's calculation, after an examination of Defendant's bank statements, admitted as Defendant's Trial Exhibit 6 and Trial Exhibit Errata, it appears that Defendant on the schedule of loan payments on his Trial Exhibit 5 has omitted two payments of $3,450.00 each made in February and March 2012, erroneously included a payment of $3,450.00 made in August 2011, and understated the payment made on February 18, 2011, by $1,000.00. This shows that Defendant's total repayment of the loan was $191,370.00. *Id.*

13. The court finds that these payments by Defendant's business show that it made substantial repayment of the loan from Plaintiff to it and corroborates Defendant's testimony that he did not intend to deceive Plaintiff in taking out the loan for his business.

14. According to Defendant in his trial declaration, after deducting the above-described payments of principal and interest on Plaintiff's loan to Defendant's business, he computed that there was a principal balance owed on the loan owed to Plaintiff in the approximate amount of $110,000, stating that he had paid $115,000 in principal and $71,920 in interest on the loan. *Trial Declaration of Paul Morris*, ¶ 6. Based on the court's analysis of Defendant's loan payments discussed above, and its analysis of the interest rate on the loan discussed below, Defendant's statement of what he thinks is the remaining principal balance on the loan in his trial declaration may not be accurate, but the court need not resolve the issue of the precise amount for the purpose of deciding this adversary proceeding because the court determines that Plaintiff has not proven her claim that the loan debt should be excepted from discharge.

15. Defendant testified at trial that he had difficulty repaying Plaintiff's loan to his business because he was detained in India until May 2013 while travelling there to

visit his sick mother, a factoring company he did business with pulled out and placed a lien on his inventory and receivables, and because two of his biggest customers went out of business, leaving him with significant uncollectable receivables. *Trial Declaration of Paul Morris*, ¶¶ 8 and 9 ("I was unable to repay the balance of the debt for the following reasons. I went to India in December, 2012, as my mother was very seriously ill and admitted to the hospital. I incurred various problems while there that prevented me from returning promptly, and did not return to the U.S. until May, 2013. As a result of this long delay, my business incurred significant losses. Moreover, the business had a problem with the factoring company—Celtic Capital Corporation—which advanced money on my sales. Celtic Capital pulled out, and placed a lien on the inventory and receivables of my business. To make matters worse, FARM CATCH and BIG FISH BAYOU, two of my biggest customers, incurred significant and fatal financial problems themselves, leaving me with a receivable of approximately $287,000. My business has been unable to collect on this and I never will collect. My business has never been able to recoup these losses as a result of the severe financial troubles of these two clients."); *Trial Testimony of Paul Morris*, January 15, 2015 at 11:13 - 11:16 a.m. and 11:23 - 11:29 a.m. (detailing the deleterious effect that the subsequent default of his customers had on his business and his ability to pay creditors, such as Plaintiff, and his efforts to collect the amounts owed to him from these customers)   The court finds this testimony to be credible and corroborates Defendant's contention that he did not intend to deceive Plaintiff regarding the loan.

## **CONCLUSIONS OF LAW**

1. The complaint in this adversary proceeding alleges a claim for relief under 11 U.S.C. § 523(a)(2)(A).
2. The claim is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), and this court has jurisdiction over the claim pursuant to 28 U.S.C. §§157(b)(1) and 1334.

3. 11 U.S.C. § 523(a)(2)(A) provides in pertinent part that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt---

\* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by---

  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . ."

4. The elements of a claim under 11 U.S.C. §523(a)(2)(A) are: (1) the debtor made representations; (2) at the time the debtor knew they were false; (3) the debtor made those representations with the intention and purpose of deceiving the creditor; (4) as the creditor justifiably relied on these representations; and (5) the creditor sustained losses as a proximate result of the debtor's representations. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010)(citations omitted); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996)(citations omitted); *accord, Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 350 (9th Cir. BAP 2012).

5. In this adversary proceeding to determine debt dischargeability under 11 U.S.C. § 523(a)(2)(A), Plaintiff has the burden of proving every element of the claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991); *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). The standard of proof on the element of reliance is justifiable reliance. *Field v Mans*, 516 U.S. 59, 72-75 (1995)(citations and footnotes omitted). Whether a requisite element of a claim under §523(a)(2) has been satisfied is a factual determination. *Islamov v. Ungar (In re Ungar)*, 633 F.3d 675, 679 (8th Cir. 2011).

6. Based on the evidence admitted at trial, the court finds that Plaintiff has not met her burden of proving a claim under 11 U.S.C. §523(a)(2)(A) because Plaintiff has not proven by a preponderance of the evidence that Defendant made representations

10

with respect to the loan she made to his business with the intention and purpose of deceiving her.

7. The court finds Defendant's testimony that he did not make any false representations to Plaintiff regarding his intent and ability to repay the loan she made to his business to be credible. Specifically, the court finds that Defendant did not make any representations to Plaintiff regarding the value of his assets, such as his real property assets, or the value of the inventory of his business, to induce her to make the loan to his business and that he had a good faith intent to repay the loan.

8. In determining that Defendant's trial testimony regarding the absence of an intent to deceive or defraud Plaintiff regarding the loan to be credible, the court makes several observations based on its review of the evidence before it. First, the lengthy personal and business relationship between Defendant and Plaintiff and her husband over ten years would have made it difficult for Defendant to deceive Plaintiff regarding his financial condition, and thus, the court does not give much credence to this argument. *Trial Testimony of Paul Morris,* January 15, 2015 at 11:24 – 11:28 a.m.; *Trial Declaration of Paul Morris,* ¶¶ 2-6; *see also, Defendant's Trial Exhibit 6* and *Defendant's Trial Exhibit Errata* (Defendant's bank statements are replete with multiple large dollar wire transfers between Plaintiff and Defendant and their respective businesses which support his assertion that the parties regularly conducted business together). Second, there is no written evidence to support Plaintiff's contention that in making the loan to Defendant's business, she relied on any physical collateral owned by him, that is, for example, Defendant's acknowledgment of loan says nothing about any apartment complex or inventory owned by Defendant. *Plaintiff's Exhibit 1*. One would think that if a lender was relying upon a borrower's collateral, the lender would have asked for a security interest in the collateral, or at least, referred to such collateral in the loan documents.

1   That is, Plaintiff made an unsecured loan to Defendant and his business, and
2   although she testified that Defendant "promised to provide collaterals to secure the
3   loan, but never carried through with it," there is no reasonable explanation why she
4   made the loan anyway without taking a proper security interest in Defendant's
5   collateral if that was what the parties intended. *Trial Declaration of Thao Nguyen,* ¶
6   4. Thus, it appears to the court that Plaintiff made the unsecured loan to Defendant
7   based on their prior personal relationship and business dealings between them and
8   her husband rather than relying on any collateral of Defendant. *See Trial*
9   *Declaration of Thao Nguyen,* ¶ 3 ("I knew Defendant Paul Faustin Morris ('Paul')
10  through my husband. We were good friends at the time, as my husband and I knew
11  him for nearly 10 years before he asked me for the loan."). As Defendant testified,
12  the parties had an informal course of dealing between themselves and their
13  respective businesses in the buying and selling of seafood products, and the
14  unsecured business loan made by Plaintiff to Defendant was part of this informal
15  course of dealing relationship based on their prior business relationship and
16  friendship without reliance on the value of collateral based on a general promise to
17  repay the loan in the future. *See Bank of Louisiana v. Bercier (In re Bercier),* 934
18  F.2d 689, (5th Cir. 1991)("A mere promise to be executed in the future is not
19  sufficient to make a debt nondischargeable, even though there is no excuse for the
20  subsequent breach."), *quoting,* 3 *Collier on Bankruptcy,* § 523.08[4] (15th Ed.).
21  9. Third, and perhaps most important in the court's view, Defendant and his business
22  made regular and substantial payment of the loan to Plaintiff over the course of over
23  two years before finally defaulting, and this evidence of substantial repayment of the
24  loan is strong evidence that Defendant did not solicit a loan from Plaintiff with any
25  intent to deceive her; rather, this evidence demonstrates convincingly to the court
26  that he honestly intended to pay back the loan made to his business by Plaintiff. .
27

*Trial Declaration of Paul Morris,* ¶ 6. *Trial Testimony of Thao Nguyen,* January 15, 2015 at 10:32 - 10:38 a.m.

10. Fourth, Defendant's testimony about subsequent and unforeseen adverse developments in his business was credible and adequately explains his later default on the loan.  *Trial Declaration of Paul Morris*, ¶¶ 8 and 9; *Trial Testimony of Paul Morris*, January 15, 2015 at 11:14 - 11:16 a.m. and 11:23 - 11:29 a.m.  While the default is explained by these circumstances, it is not excused as Plaintiff has a unsecured claim for the unpaid amount owed on the loan, but this debt is not excepted from discharge under 11 U.S.C. § 727 unless Plaintiff proves that it is excepted from discharge on her claim under 11 U.S.C. § 523(a)(2)(A).

11. Thus, based on the foregoing, the court respectfully disagrees with Plaintiff's argument that "where there is evidence that debtor himself knew or should have known of his prospective inability to perform under the contract, the promise to perform can be found to be fraudulent under the discharge exception in §523(a)(2)(A)." *Plaintiff's Trial Brief*, ECF 51 at 3:7-10 (citing *In re Barrack*, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998)).  As previously discussed, Defendant made regular and substantial repayments of the loan after it was made, and the evidence is insufficient on this record that he did not intend to perform, or knew of his prospective inability to perform, and in this court's view, such regular and substantial loan repayments indicate a good faith intent of Defendant to repay the loan.  The undisputed evidence discussed herein shows that Defendant made payments totaling $191,370 on the loan, which represents 85% of the principal amount of the loan of $225,000 (as discussed below, the amount of Plaintiff's claim based on the loan is probably overstated based on the 36% rate of interest, which appears to be usurious in violation of California law) .  As discussed herein, subsequent events which have been shown to be known by Defendant at the time of the loan or reasonably foreseeable rendered him unable to fully perform on the loan.

12. Moreover, the court does not find persuasive Plaintiff's argument regarding Defendant's lack of intent to repay the loan that "Plaintiff had to call and beg [Defendant] to pay and was even tormented by him during her attempts to collect. Defendant is sugarcoating his past conduct to mask his true motives; however, Defendant's claims cannot be fully relied on because it is based off of invalidated information. The fact that Defendant never voluntarily paid and even frustrated any collection efforts by Plaintiff shows that Defendant never had the intention to repay Plaintiff." *Plaintiff's Trial Brief*, ECF 51 at 4:10-15. Plaintiff's only evidentiary support for this argument is a few documents which appear to show Plaintiff and her husband sending emails to Defendant demanding payment after the loan default much later, that is, all of these emails were sent in 2013 for a loan made in late 2010 and early 2011 with regular and substantial loan repayments in 2011 and 2012 and a final default in January 2013. *Plaintiff's Exhibit* 2. The court does not find these emails persuasive evidence of Defendant's intent to deceive or defraud Plaintiff in paying her back on the loan. Instead, this evidence corroborates Defendant's contentions that he did his best to repay the loan until the development of subsequent and unforeseen circumstances — two of his customers went out of business and a factoring company put a lien on his receivables and inventory — at which time he had no ability to repay the loan. Accordingly, the court rejects this argument made by Plaintiff.

13. The court also determines that, even assuming for the sake of argument that Defendant did make the alleged statements at issue here, Plaintiff did not justifiably rely on those statements. Although "justifiable" reliance is a lower standard than reasonable reliance, "[j]ustifiability is not without some limits… a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field v. Mans*, 516 U.S. at 71, *citing* Restatement (Second) of Torts §541, Comment *a* (1976). Here, the court finds that

given the long history of friendship and business dealings (nearly 10 years at the time of the loan) between her, her husband and Defendant, and her knowledge of his business, combined with an apparent complete lack of examination or investigation of the alleged statements made by Defendant regarding his financial condition, Plaintiff was not justified in relying on the statements she alleged were made by Defendant in making the loan. That is, if she were relying on the nature and value of Defendant's personal and business assets, she would have taken a security interest in such assets, whether real or personal property, or at least have taken advantage of her opportunity to make a cursory examination or investigation of such an alleged claim of ownership by looking at title documents for the real property assets which are most likely matters of public record as deeds recorded with the county recorder and obtained valuation information, such as a broker's price opinion or an appraiser by a licensed appraiser. Plaintiff did not do any of this, apparently relying upon her and her husband's friendship and prior business dealings with Defendant in making an unsecured loan to his business.

14. For the foregoing reasons, the court determines that Plaintiff has not proven her claim under 11 U.S.C. §523(a)(2)(A) by a preponderance of the evidence and that judgment should be entered in favor of Defendant and against Plaintiff that the loan debt owed by him to her is not excepted from discharge under that statute.

15. Alternatively, the court is not sure that Plaintiff has even proven a valid claim for the full amount of $110,000 that Defendant is still indebted to her on the loan because it appears on this record that the loan agreement entered into between the parties charged a usurious interest rate in violation of California law, and if the usurious interest rate is disregarded, Defendant may have substantially paid the loan debt by wire transfer and check payments to Defendant totaling $191,370.00, which represents a substantial portion of the $225,000 loan principal. If Plaintiff cannot show that she has a valid claim for the unpaid loan balance in the full claimed

amount of $110,000 against Defendant, any liability under 11 U.S.C. §523(a)(1)(A) would be less than the amount of $110,000 that she is claiming. [2]

16. The California Constitution, article XV, Section 1, states "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action."

17. The elements of usury under California law are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction. *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994), *citing inter alia,* 4 Miller & Starr, *California Real Estate Law* § 10:2 at 650 (2d ed. 1989). Such intent does not require that the lender intended to evade the law, only that he or she intended to collect more than the legal rate of interest. *Id.* The borrower bears the burden of proving the essential elements of a usurious transaction. *Id.* at 799 (citations omitted).

18. The maximum legal rate of interest for a loan primarily for use other than "personal, family, or household purposes" is the higher of (a) 10 percent per annum or (b) 5 percent per annum plus [the "discount rate" on advances to member banks in effect at the Federal Reserve Bank of San Francisco near the time the loan was entered into]. California Constitution, Article XV, § 1(2). Because the applicable "discount

---

[2] The issue of usury was not raised by the parties or the court at trial, and is raised by the court sua sponte upon reviewing the evidentiary record after trial. Because this is an alternative theory for denial of relief supported by the record, the court discusses it here. However, it may not be dispositive here because the parties have not had an opportunity to address the issue raised by the court, but the court raises and discusses the argument because it has difficulty as a court of equity to rule in favor of Plaintiff in light of the factual circumstances of the case to enforce a loan debt that is not fully paid only based on a usurious rate of interest in violation of California law. This discussion might be helpful if somehow there is an appeal and the case is returned to the court for redetermination.

rate" has been 0.75% since February 19, 2010,[3] the court determines that the maximum legal rate of interest is 10% per annum for all times relevant in this case

19. Here, it appears that all of the elements for a claim of usury under California law as to the subject loan are undisputed: (1) Plaintiff lent Defendant's business money; (2) the interest rate was 36% per annum, which exceeds the legal maximum; (3) the loan does not have a contingency by which Defendant could avoid repaying it — it is therefore absolutely repayable by the borrower; and (4) Plaintiff intended to enter into the transaction and to charge 36% interest. *Ghirardo v. Antonioli*, 8 Cal. 4th at 798. The record supports a finding of all of these facts as it is undisputed that a loan was made of $225,000 by Plaintiff to Defendant at 36% percent, that there is no contingency to avoid repayment, and that the parties intended that the interest rate be 36%. *Trial Declaration of Paul Morris,* ¶ 6; *Trial Testimony of Thao Nguyen,* January 15, 2015, at 10:06 a.m.; *Trial Declaration of Thao Nguyen,* ¶¶ 5 and 7.

20. Although there are numerous exemptions to California's usury law,[4] it does not appear that any of those exemptions apply to this transaction or to Plaintiff and her husband. *See* Miller and Starr, *California Real Estate Law,* §§ 21:34 and 21:35 (3d ed. online 2014) (listing various lenders and transactions that are exempt from California's usury law).

21. Despite a transaction being usurious, normally the lender would be entitled to recover the principal of the loan, and while interest on the loan would be void by reason of usury, the lender may be entitled to interest only at the legal rate (i.e., the constitutional rate of 7%) after the maturity date of the loan. *See* Schwing, *California Affirmative Defenses, Usury,* § 37:13 (online ed. 2015), *citing inter alia, Verbeck v.*

---

[3] *See* ""Discount Rate" on Advances to Member Banks under Sections 13 and 13a of the Federal Reserve Act in Effect at the Federal Reserve Bank of San Francisco," http://www.frbsf.org/banking-supervision/banking-economic-data/discount-rate/ (last checked April 2, 2015).

[4] "[T]he usury law is complex and is riddled with so many exceptions that the law's application itself seems to be the exception rather than the rule." *Ghirardo v. Antonioli*, 8 Cal. 4th at 807.

*Clymer,* 202 Cal. 557, 562 (1927) and *Green v. Future Two,* 179 Cal. App. 3d 738, 744 (1986). Thus, while Plaintiff has suffered a loss from Defendant's failure to repay the loan in full, her claim would have to be reduced by the substantial loan repayments made by Defendant in 2011 and 2012, and interest would only be allowed at the legal, or constitutional, rate of 7% rather than at the usurious 36% rate after the maturity dates of the loan, i.e., 30 days after disbursement of the loan proceeds by Plaintiff to Defendant.

22. Judgment in this adversary proceeding is being entered concurrently herewith.

23. The further hearing after trial on May 26, 2015 at 2:00 p.m. is hereby vacated now that the court has issued these findings of fact and conclusions of law and is entering judgment.

IT IS SO ORDERED.

###

Date: April 7, 2015

_____
Robert Kwan
United States Bankruptcy Judge